1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

Latrina C. Cox,

                Plaintiff,

    v.

Kilolo Kijakazi, Acting Commissioner of
Social Security,

                Defendant.

Case No. 2:21-cv-01244-BNW

**ORDER re ECF Nos. 25 and 28**

11

12

13

14

15

16

      This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff[1] Latrina C. Cox's application for supplemental security income under Title XVI of the Social Security Act. The Court reviewed Plaintiff's motion for reversal or remand (ECF No. 25), filed March 25, 2022, the Commissioner's response and cross-motion to affirm (ECF Nos. 28, 29), filed May 25, 2022, and Plaintiff's reply, filed June 12, 2022. ECF No. 30.

17

18

19

      On July 1, 2021, the parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c), and this matter was assigned to the undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *See* ECF No. 3.

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27

28

---

[1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for the purposes of this Order.

1

**I.     BACKGROUND**

2

    **1.     Procedural History**

3

       On September 13, 2015,[2] Plaintiff applied for supplemental security income under Title

4

XVI of the Act, alleging an onset date of January 1, 2007. ECF No. 18-1[3] at 333–41. Plaintiff's

5

claim was denied initially and on reconsideration. *Id*. at 263–66; 270–72.

6

       A hearing was held before Administrative Law Judge ("ALJ") Cynthia Hoover on January

7

4, 2018. *Id*. at 139–71. On July 23, 2018, ALJ Hoover issued a decision finding that Plaintiff was

8

not disabled. *Id*. at 25–39; 771–85. On July 9, 2019, the Appeals Council denied review. *Id*. at 7–

9

12; 790–95. Plaintiff filed suit in federal court, and, on January 23, 2020, the Hon. Cam

10

Ferenbach remanded (on stipulation) the case to the Appeals Council. *Id*. at 796–805; 811–12.

11

       On remand, the Commissioner appointed ALJ John Cusker to preside over the matter. A

12

telephonic hearing[4] was held before ALJ Cusker on March 3, 2021. *Id*. at 727–50. On April 26,

13

2021, the ALJ issued a decision finding Plaintiff not disabled. ECF No. 18-1 at 703–19. And on

14

July 1, 2021, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g).[5] *See*

15

IFP App. (ECF No. 1).

16

**II.     DISCUSSION**

17

    **1.     Standard of Review**

18

       Administrative decisions in Social Security disability benefits cases are reviewed under 42

19

U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

20

---

21

[2] The application cover page is dated September 13, 2015, though the date next to Plaintiff's signature reads her date of birth. ECF No. 18-1 at 332, 341. At the same time, in a letter Plaintiff's counsel submitted to the Appeals Council,

22

the application date is identified as August 27, 2015. *Id*. at 417.

[3] ECF No. 18 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed.

23

(Notice of Electronic Filing (ECF No. 18)). All citations to the Administrative Record will use the CM/ECF page numbers.

[4] The hearing was held telephonically due to COVID-19. ECF No. 18-1 at 729.

24

[5] It appears that the Appeals Council did not review ALJ Cusker's April 26, 2021 decision. As a result, ALJ Cusker's decision on remand is the final decision of the Commissioner, as the Appeals Council did not subsequently assume

25

jurisdiction. *See* Richard C. Ruskell, Soc. Sec. Disab. Claims Handbook § 3:24, Court Remand Cases; Remand vs. Reversal (May 2022 Update) ("When a case is remanded by a federal court for further consideration and the Appeals

26

Council remands the case to an administrative law judge, or an administrative appeals judge issues a decision pursuant to 20 C.F.R. §§ 404.983(c) and 416.1483(c), the decision of the administrative law judge or administrative

27

appeals judge will become the final decision of the Commissioner after remand on the case unless the Appeals Council assumes jurisdiction of the case.").

28

1   provides that "[a]ny individual, after any final decision of the Commissioner of Social Security

2   made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

3   obtain a review of such decision by a civil action . . . brought in the district court of the United

4   States for the judicial district in which the plaintiff resides." The court may enter "upon the

5   pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

6   decision of the Commissioner of Social Security, with or without remanding the cause for a

7   rehearing." 42 U.S.C. § 405(g).

8          The Commissioner's findings of fact are conclusive if supported by substantial evidence.

9   *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

10  findings may be set aside if they are based on legal error or not supported by substantial evidence.

11  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

12  278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a

13  mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

14  might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

15  Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

16  whether the Commissioner's findings are supported by substantial evidence, the court "must

17  review the administrative record as a whole, weighing both the evidence that supports and the

18  evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

19  720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

20         Under the substantial evidence test, findings must be upheld if supported by inferences

21  reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

22  When the evidence will support more than one rational interpretation, the court must defer to the

23  Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

24  *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

25  before the court is not whether the Commissioner could reasonably have reached a different

26  conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on

27  the ALJ to make specific findings so that the court does not speculate as to the basis of the

28  findings when determining if the Commissioner's decision is supported by substantial evidence.

1   Mere cursory findings of fact without explicit statements as to what portions of the evidence were

2   accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

3   The ALJ's findings "should be as comprehensive and analytical as feasible, and where

4   appropriate, should include a statement of subordinate factual foundations on which the ultimate

5   factual conclusions are based." *Id.*

6            **2.      Disability Evaluation Process and the ALJ Decision**

7            The individual seeking disability benefits has the initial burden of proving disability.

8   *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

9   demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

10  determinable physical or mental impairment which can be expected . . . to last for a continuous

11  period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

12  must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

13  § 404.1514. If the individual establishes an inability to perform her prior work, then the burden

14  shifts to the Commissioner to show that the individual can perform other substantial gainful work

15  that exists in the national economy. *Reddick*, 157 F.3d at 721.

16           The ALJ follows a five-step sequential evaluation process in determining whether an

17  individual is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at

18  any step the ALJ determines that he can make a finding of disability or non-disability, a

19  determination will be made, and no further evaluation is required. *See* 20 C.F.R.

20  § 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

21           Step one requires the ALJ to determine whether the individual is engaged in substantial

22  gainful activity ("SGA"). 20 C.F.R. § 416.920(b). SGA is defined as work activity that is both

23  substantial and gainful; it involves doing significant physical or mental activities usually for pay

24  or profit. If the individual is engaged in SGA, then a finding of not disabled is made. If the

25  individual is not engaged in SGA, then the analysis proceeds to step two.

26           Step two addresses whether the individual has a medically determinable impairment that

27  is severe or a combination of impairments that significantly limits her from performing basic

28  work activities. *Id.* § 416.920(a)(4)(ii). An impairment or combination of impairments is not

severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *See* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[6] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then a finding of disabled is made. 20 C.F.R. § 416.920(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 416.945; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 416.913 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

---

[6] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

1    Step four requires the ALJ to determine whether the individual has the RFC to perform

2    her past relevant work ("PRW"). 20 C.F.R. § 416.920(a)(4)(iv). PRW means work performed

3    either as the individual actually performed it or as it is generally performed in the national

4    economy within the last 15 years. In addition, the work must have lasted long enough for the

5    individual to learn the job and performed a SGA. If the individual has the RFC to perform her

6    past work, then a finding of not disabled is made. If the individual is unable to perform any PRW

7    or does not have any PRW, then the analysis proceeds to step five.

8        The fifth and final step requires the ALJ to determine whether the individual can do any

9    other work considering her RFC, age, education, and work experience. 20 C.F.R.

10   § 416.920(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the

11   individual generally continues to have the burden of proving disability at this step, a limited

12   burden of going forward with the evidence shifts to the Commissioner. The Commissioner is

13   responsible for providing evidence demonstrating that other work exists in significant numbers in

14   the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

15       Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

16   § 416.920. ECF No. 18-1 at 709–19.

17       At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

18   "since August 27, 2015, the current claim application date[.]" *Id*. at 709.

19       At step two, the ALJ found that Plaintiff had the following medically determinable

20   "severe" impairments: degenerative disc disease and obesity. *Id*.

21       At step three, the ALJ found that Plaintiff did not have an impairment or combination of

22   impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P,

23   Appendix 1, specifically noting Listings 1.15, 1.16, 1.18, 12.02, 12.04, and 12.06. *Id*. at 712.

24       Before moving to step four, the ALJ found that Plaintiff had the RFC to perform sedentary

25   work and can sit for about 6 hours in an 8-hour workday with normal breaks; stand and walk for

26   about 2 hours in an -hour workday; lift or carry 10 pounds occasionally and frequently;

27   occasionally climb ramps and stairs; frequently balance and kneel; occasionally stoop, crouch,

28   and crawl; and needs a 4-point cane for ambulation and balance. *Id*. at 713. The ALJ further

1  found that Plaintiff cannot climb ladders, ropes, or scaffolds and that she must avoid concentrated

2  exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation, and hazards. *Id*.

3      At step four, the ALJ found that Plaintiff has no PRW. *Id*. at 718.

4      At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and

5  found that there are jobs that exist in significant numbers in the national economy that she can

6  perform. *Id*. at 718–19. Specifically, the ALJ found that Plaintiff can work as an account clerk,

7  order clerk, or telephone quotations clerk. *Id*. at 719. The ALJ then concluded that Plaintiff was

8  not under a disability at any time since August 27, 2015. *Id*.

9      **3.      Analysis**

10      **A.      Treating physician Dr. Paterno Jurani, M.D.'s opinion**

11      The parties disagree about whether the ALJ provided specific and legitimate reasons for

12  assigning "no" weight to the opinions provided by treating physician Dr. Paterno Jurani, M.D.

13  Whereas Plaintiff contends that the ALJ failed to give proper weight to the opinions of her

14  treating physician, the Commissioner counters that the ALJ properly considered Dr. Jurani's

15  opinion. *Compare* ECF No. 25 at 12 *with* ECF No. 28 at 6.

16      The Ninth Circuit classifies medical opinions into three hierarchical categories: (1)

17  treating physicians (i.e., those who treat the plaintiff), (2) examining physicians (i.e., those who

18  examine but do not treat the plaintiff), and (3) non-examining physicians (i.e., those who neither

19  treat nor examine the plaintiff). *Lester v. Chater*, 81 F.3d 821, 830. "Because treating physicians

20  are employed to cure and thus have a greater opportunity to know and observe the patient as an

21  individual, their opinions are given greater weight than the opinions of other physicians." *Smolen*

22  *v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). This standard—known as the Treating Physician

23  Rule—was in effect at the time Plaintiff filed her disability application and, as a result, governs

24  this case.[7]

25

26  [7] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. The new regulations provide that the ALJ will no longer "give

27  any specific evidentiary weight . . . to any medical opinion(s). . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68; *see* 20 C.F.R. § 416.920c(a). Here, Plaintiff applied for Title XVI benefits on September 13,

28  2015. ECF No. 18-1 at 333–41. This would, therefore, make the old regulations discussed above applicable to Plaintiff's claims. 20 C.F.R. § 416.920c ("For claims filed before March 27, 2017, the rules in § 416.927 apply.").

1    An ALJ may reject a treating physician's uncontradicted opinion by providing "clear and

2    convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675

3    (9th Cir. 2017). But if a treating physician's opinion is contradicted, the ALJ may only reject it

4    with "specific and legitimate" reasons supported by substantial evidence in the record. *Orn v.*

5    *Astrue*, 495 F.3d 625, 628 (9th Cir. 2007). This is to mean that the ALJ "'must do more than offer

6    his conclusions; he must set forth his own interpretations and explain why they, rather, than the

7    doctor['s], are correct.'" *Belanger v. Berryhill*, 685 Fed. App'x 596, 598 (9th Cir. 2017). This is a

8    necessary step so that the reviewing court does not speculate as to the basis of the findings when

9    determining whether substantial evidence supports the ALJ's decision.

10    Here, the ALJ assigned "no" weight to the opinions provided by Dr. Jurani who treated

11    Plaintiff from about July 2013 through November 2020. *See, e.g.,* ECF No. 18-1 at 447, 536, 593,

12    683, 717, 1000, 1042, 1101, 1227.

13    Because Dr. Jurani's opinions were arguably contradicted by those provided by state

14    agency physicians Rosalita Jurani, M.D. and Rene Pena, M.D., the ALJ was required to provide

15    specific and legitimate reasons supported by substantial evidence to reject the treating physician's

16    opinions.

17    The ALJ gave four reasons for rejecting Dr. Jurani's opinions: (1) "most" of the treating

18    physician's statements are "vague" and speak "on an issue reserved to the Commissioner[,]" (2)

19    his opinions are "internally inconsistent," (3) his opinions are not supported by objective medical

20    evidence, and (4) the treating provider gave "very little explanation for his opinions." *Id*. at 716–

21    17. As discussed below, the Court finds that the ALJ's reasons for discrediting Dr. Jurani are not

22    specific and legitimate.

23              **i.**      **Reason #1: Dr. Jurani's statements speak to an issue reserved**
**for the Commissioner**

24    Turning to the ALJ's first reason—that Dr. Jurani's statements speak to an issue reserved

25    for the Commissioner—the ALJ cannot reject a treating physician's opinion simply because it

26

27

28

1    addresses an issue that is reserved for the Commissioner. *See Cabe v. Saul*, No. 5:20-CV-0012-

2    HRH, 2021 WL 2580122, at *5 (D. Alaska June 23, 2021) ("As for any argument that the ALJ

3    did not have to consider the [treating physician's] opinion because it was simply an opinion that

4    plaintiff was disabled, that argument fails."); *see also Dunaway v. Comm'r of Soc. Sec*., No. 3:19-

5    CV-299, 2020 WL 2465012, at *5 (S.D. Ohio May 13, 2020) ("Regardless of whether an issue is

6    reserved to the Commissioner, there remains a presumption . . . that the opinion of a treating

7    physician is entitled to great deference.").

8         "It is true that the question whether one is disabled is a legal question that may turn on

9    non-medical factors and is thus reserved for the Commissioner." *T.N., Plaintiff, v. KILOLO*

10   *KIJAKAZI, Defendant.,* No. 20-CV-07518-VKD, 2022 WL 2222967, at *12 (N.D. Cal. June 21,

11   2022). But because the issue of disability is an issue reserved for the Commissioner in every

12   Social Security disability case, "[a]cknowledging this reservation says nothing specific or

13   legitimate about why the ALJ in this particular case rejected th[is] particular opinio[n] by th[is]

14   particular treating physicia[n]." *Herrera v. Colvin*, No. ED CV 14-1340-E, 2015 WL 12697712,

15   at *3 (C.D. Cal. Apr. 20, 2015). This is to mean that "regardless of whether an issue is 'reserved

16   for the Commissioner,' the ALJ still must set forth specific, legitimate reasons for rejecting a

17   treating physician's opinion that a claimant is disabled." *Id*. (citations omitted). And the ALJ's

18   general discussion about the handful of certificates of disability Dr. Jurani completed, most of

19   which notably addressed more than simply stating that Plaintiff was disabled, does not provide

20   the specificity required by law. *See Benton v. Comm'r of Soc. Sec. Admin*., No. CV-20-01846-

21   PHX-GMS, 2022 WL 2071980, at *4 (D. Ariz. June 9, 2022); *see also Hill v. Astrue*, 698 F.3d

22   1153, 1159 (9th Cir. 2012) (finding that the ALJ erred in ignoring and failing to discuss medical

23   opinion where opinion was "not a conclusory statement" about ability to work but rather "an

24   assessment, based on objective medical evidence").

25            **ii.      Reason #2: Dr. Jurani's opinions are "internally inconsistent"**

26        The ALJ next discounted Dr. Jurani's opinions because they were "internally

27   inconsistent." ECF No. 18-1 at 716. But no further explanation was given. As a result, the ALJ's

28   conclusory reason fails to meet the ALJ's burden of "setting out a detailed and thorough summary

1    of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

2    findings." *Trevizo*, 871 F.3d at 675 (internal citations omitted)

3          Moreover, in reviewing the record, the Court found that Dr. Jurani's progress notes were

4    consistent.[8] For example, in the several certificates of disability he completed, Dr. Jurani noted

5    that Plaintiff had standing (ranging from "a few minutes" to 15 minutes), walking, and lifting

6    (ranging from 5 to 10 pounds) limitations. *Id.* at 455, 604, 677, 678, 996. He also consistently

7    noted Plaintiff's postural limitations (e.g., inability to bend or kneel) and her need to use a walker

8    or cane to ambulate. *Id*. at 604, 678. Dr. Jurani's progress notes dated from 2015 to 2020 further

9    found, through objective examination, that Plaintiff suffered from pain with flexion; limited range

10   of motion, spasms, and tenderness in her lumbar spine; and bilateral leg weakness. *See, e.g., id.* at

11   545, 550, 563, 683, 1002, 1045. The treating physician's progress notes from this same time

12   period also indicated that Plaintiff's straight leg raising test was consistently bilaterally positive.

13   *See, e.g., id*. at 545, 550, 559, 563, 683, 1002, 1045, 1104.

14          **iii.    Reason #3: Dr. Jurani's opinions are not supported by the
     objective medical evidence**

15

16         The ALJ further discounted the opinions of Plaintiff's treating physician on grounds that

17   they were unsupported by the objective medical evidence. ECF No. 18-1 at 716. According to the

18   ALJ, Dr. Jurani's "clinical findings" relating to Plaintiff's use of a cane, her unsteady and antalgic

19   gait, lumber tenderness on palpation, limited lumbar range of motion, pain with flexion, muscle

20   spasm, bilaterally positive straight leg raise test, and bilateral leg weakness appear to conflict with

21   Plaintiff's cervical spine and lumbar spine MRIs. *Id*. Specifically, the ALJ points to the MRI

22   findings that showed "only minimal lumbar disc bulging, with no neural compromise, and mild

23   cervical disc bulging, with no evidence of spinal stenosis, cord compression or foraminal

24   stenosis[.]" *Id*. at 716–17.

25   ---
[8] Although the Court found that, on several occasions, Dr. Jurani noted that Plaintiff's gait was normal, nearly all of
26   these notes are dated from 2013 and 2014 (before Plaintiff's disability application). *Id*. at 482 (September 12, 2014),
     509 (February 24, 2014), and 518 (December 24, 2013). There is, however, a progress note dated May 22, 2015
27   referencing Plaintiff's "normal" gait. ECF No. 18-1 at 447. Nevertheless, the remainder of the treating physician's
     progress notes (from 2015 through 2020) consistently referred to Plaintiff's gait as "antalgic," "asymmetric," or
28   "unsteady." *See, e.g., id.* at 456 (March 25, 2015), 567 (April 28, 2017), 591 (November 28, 2016), 1098 (November
     25, 2019), 1145 (July 19, 2018), 1231 (November 6, 2020).

1    This reason is not a specific and legitimate reason. As the Ninth Circuit has held, "To say

2    that medical opinions are not supported by sufficient objective findings . . . does not achieve the

3    level of specificity our prior cases have required, even when the objective factors are listed

4    seriatim." *Embrey*, 849 F.2d at 421. Moreover, it is unclear to this Court how the ALJ's reference

5    to Plaintiff's *cervical* spine MRI results has any bearing on or conflicts with Dr. Jurani's clinical

6    findings regarding Plaintiff's *lumbar* spine. Nor is it clear to the Court how one lumbar spine

7    MRI can—on its own or coupled with a cervical spine MRI—negate Dr. Jurani's objective

8    findings. In short, this is to say that the ALJ fails to explain *how* Dr. Jurani's objective

9    examination findings, which the ALJ himself enumerates, conflict with a cervical spine MRI and

10   a lumbar spine MRI taken on the same day in 2018.

11                                    **iv.**       **Reason #4: Dr. Jurani provided "very little explanation for his**

12   **opinions"**

13        The ALJ's fourth and final reason for rejecting Dr. Jurani's opinions plainly lacks the

14   requisite specificity. This is because the ALJ simply reasoned—without any explanation—that

15   Dr. Jurani gave "very little explanation for his opinions." ECF No. 18-1 at 719. Dr. Jurani

16   provided different opinions, including those in his treatment notes as well as those in the

17   certificates of disability. Without further clarification, the Court cannot determine which opinions

18   lack explanation. The Court further notes that if the ALJ required additional explanations to

19   evaluate Dr. Jurani's opinions, he should have further developed the record. *Herrera*, 2015 WL

20   12697712, at *3 (citing *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)) ("Social Security

21   proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts

22   and develop the arguments both for and against granting benefits . . . .").

23   **III.**    **Conclusion and Order**

24        Accordingly, because the ALJ failed to provide specific and legitimate reasons supported

25   by substantial evidence to reject Dr. Jurani's opinions, the Court finds that he erred. The Court

26   further finds that the error is not harmless, as it was consequential to the ultimate non-disability

27   determination. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (citation omitted)

28

1  (noting that an error may only be considered harmless if it is "clear from the record" that the error

2  was "inconsequential to the ultimate nondisability determination."). Accordingly, reversal of the

3  ALJ's determination is warranted.

4        **IT IS THEREFORE ORDERED** that Plaintiff's motion to remand (ECF No. 25) is

5  GRANTED.

6        **IT IS FURTHER ORDERED** that, on remand, the ALJ should reconsider Dr. Paterno

7  Jurani's medical opinion evidence and continue the disability evaluation to step four and, if

8  necessary, to step five.

9        **IT IS FURTHER ORDERED** that the Commissioner's cross-motion to affirm (ECF

10  Nos. 28, 29) is DENIED.

11        **IT IS FURTHER ORDERED** that the Clerk of Court must enter judgment in favor of

12  Plaintiff Latrina C. Cox and against Defendant Commissioner of Social Security.

13        **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this

14  case.

15

16        DATED: June 22, 2022.

17  _____

18        BRENDA WEKSLER
      UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28